# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JUN 26 2023 PM2:54
FILED-USDC-CT-HARTFORD

| | |
|---|---|
| Alice Guan | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) **Civil Case No.** _____ |
| | ) |
| Liam O'Grady, as an Individual | ) 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims |
| Address Unknown, AND | ) Conspiracy, Abuse of Process, Negligence, Tort, |
| Jen Kim, 9514 Shelly Krasnow Lane | ) Tort. Interference with Contract |
| Fairfax, VA 22031, AND | ) Performance and Business Expectancy, |
| James C. Clark, as an Individual | ) Injunctive Relief, Conversion, Defamation, |
| Address Unknown, AND | ) Declaratory Judgement, Impairing Contractual |
| Robert Bruce King, as an Individual | ) Obligations, Deprivation of Property per 1983 |
| Address Unknown, AND | ) |
| Paul V, Niemeyer, as an Individual | ) **Jury Trial Demanded** |
| Address Unknown, AND | ) |
| Liam O'Grady, Judge | ) |
| For the Eastern District of Virginia | ) |
| 401 Courthouse Square | ) |
| Alexandria, Virginia, 22314, AND | ) |
| James C. Clark, Judge | ) |
| Alexandria Circuit Court | ) |
| 520 King Street | ) |
| Alexandria, VA 22314, AND | ) |
| Robert Bruce King, Judge | ) |
| Fourth Circuit Court of Appeal | ) |

1

| | |
|---|---|
| 1100 East Main Street, Suite 501 | ) |
| Richmond, VA 23219, AND | ) |
| Paul V, Niemeyer, Judge | ) |
| Fourth Circuit Court of Appeal | ) |
| 1100 East Main Street, Suite 501 | ) |
| Richmond, VA 23219, AND | ) |
| Eastern District Court of Virginia | ) |
| 401 Courthouse Square | ) |
| Alexandria, Virginia, 22314, AND | ) |
| Fourth Circuit Court of Appeal | ) |
| 1100 East Main Street, Suite 501 | ) |
| Richmond, VA 23219, AND | ) |
| The Alexandria Circuit Court, | ) |
| the 18th Judicial Circuit of Virginia | ) |
| 520 King Street | ) |
| Alexandria, VA 22314 | ) |
| **Defendants.** | ) |

## COMPLAINT

## PARTIES

1. Plaintiff Alice Guan is a Massachusetts resident.

2. Defendants Jen Kim, James C. Clark, Robert Bruce King, Paul V, Niemeyer, Liam O'Grady are Virginia residents.

3. Defendants James C. Clark, Robert Bruce King, Paul V, Niemeyer, Liam O'Grady work as a judges for Alexandria Circuit Court, for the Fourth Circuit Court of Appeal, for District Court for the Eastern District of Virginia, respectively.

2

4. The Alexandria Circuit Court, the Fourth Circuit Court of Appeal, the District Court for the Eastern District of Virginia ("Court Defendant 1", "Court Defendant 3", "Court Defendant 2", respectively) are all located in Virginia.

5. All Defendants violated the Constitutions and federal laws that led to 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims. Some defendants violated other laws, see below.

## JURISDICTION AND VENUE

6. This Court has the original jurisdiction over the subject matter of this complaint pursuant to 42 U.S. Code § 1983 and 18 U.S. Code § 242 as it asserts a claim that arises under all defendants' conducts that are in violations of the Constitution and Federal laws.

7. Connecticut has been well-known as The Constitution State that has always had the very solid foundations of law and governess and this is the state the Congress was modelled after. Thus, this case is filed here.

8. This court has the jurisdiction over the matter due to the reason that The Alexandria Circuit Court, the Fourth Circuit Court of Appeal, the District Court for the Eastern District of Virginia are named as defendants in this Complaint and they themselves are not able to adjudicate claims against themselves.

9. This court has the jurisdiction over the matter also due to the reason that the Fourth Circuit Court of Appeal and the District Court for the Eastern District of Virginia have already decided to rule against the Plaintiff for a case such as this one is filed in the District Court for the Eastern District of Virginia, or another district court in Virginia, or a court that is under Fourth Circuit Court of Appeal or is filed IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS.

10. Venue also appropriate because of paragraphs 6-9 above.

## FACTUAL ALLEGATIONS

### I as Yue Guan Establishing AdSTM and Grew It to Be a $16M/Year Company

11. My Former name is Yue Guan.

12. I have a PhD degree in nuclear engineering from the University of Maryland with dissertation research on NRC sponsored Westinghouse AP600 Safety Analysis under the advisement of Professor Mohammad Modarres.

13. I worked for Bechtel Power Corporation and DSIC on nuclear reactor safety, on nuclear energy projects for DOE, and on defense system reengineering for DOD.

14. Then, I formed AdSTM (VA State Corp Commission ID: 04753000) on November 25, 1996.

15. I wrote AdSTM's by-law and designated the President position as the position to have the control of AdSTM.

16. I became AdSTM's 100% stock owner and AdSTM's President and CEO.

17. I certified AdSTM as an SBA 8(a) firm based on my application and qualification.

18. I obtained Top Secret Facility Security Clearance for AdSTM and I served as AdSTM's facility security officer for many years.

19. I developed the PTO trademarked SAMMS$^{TM}$: Systemic Analysis Mapping Modeling and Simulation.

20. I have received several awards from the DOD: Admirals awards, awards from Office of Research and Development under the Secretary of Defense, and the prestigious David Packard awards as part of the Indian Head's CAD/PAD reengineering team under the contract from PMA201 conventional strike weapons office out of Patuxent River, MD.

21. In addition to managing AdSTM, I also served as American Nuclear Society's (ANS) Washington DC, Virginia, Maryland local chapter's Chairwoman, served as assistant chair for ANS national meeting.  I was also a lecturer / adjunct professor at the National Defense University (NDU, in Washington DC) and the George Washington University (GWU) on modeling and simulation for decision making for reengineering and for reforming systems and processes.

22. I obtained federal contracts for AdSTM in 5 agencies: DOD, DOE, NRC, DOT, and NASA.  By 2006, AdSTM's annual revenue was about $16M.

23. AdSTM successfully graduated from SBA's 8(a) program in June 2008.

**I and My Ex-Husband's Roles in Managing AdSTM**

24. In or about 2001, I hired my then husband Bing Ran as a full-time employee.

25. In 2007, I spent about $380 in legal fees to file for and to complete a straightforward Divorce in Alexandria Circuit Court in case CL07003662.

26. Soon after AdSTM graduated from the 8(a) program, Bing Ran became the CEO of AdSTM.  Later it was discovered that Bing Ran began to hide from me real contract and real financial information and his real conducts since 2008/2009.

27. In the fall of 2014, Defense Security Agency suddenly called me into AdSTM office for a meeting, and they suddenly wanted to strip Bing Ran's management capability.

28. Soon, I found in my locked office floor papers of AdSTM's contract and financial data that I have never seen before and those data was dating back from year 2009 through 2014 and I found paper containing clear sentences that Bing Ran owed me more than $8M per the Divorce Decree in a court and a reference to an attorney in Fairfax Virginia.

Within a month, in October 2014, that attorney opened up my old divorce case and filed Petition against Bing Ran in my divorce case seeking Bing Ran disclose AdSTM's full accounting and seeking monetary damages from Bing Ran per the Decree of Divorce.

29. Defendant James Clark presided over that re-opened Divorce Case.

30. Bing Ran wanted to reduce the money owed to me to about $500,000 by asking Defendant James Clark to retroactively incorporate an October 15, 2008 Amendment (which was signed by Bing Ran and I on October 15, 2008) into the Decree of Divorce, which Defendant James Clark did so[1] on May 13, 2016.

31. Defendant James Clark's May 13, 2016 order incorporating the October 15, 2008 Amendment ("October Amendment") into the Decree of Divorce changed the $8M owed by Bing Ran to me to $500,000 owed to me to be paid by AdSTM, and by the operation of that October Amendment as a Decree of Divorce, I, from May 13, 2016 and on, had been installed as the most important figure in AdSTM per several terms of that October Amendment: I became the only person who can control AdSTM.

**Before May 13, 2016 October Amendment As A Private Agreement Gave Me the Right to Control AdSTM Then Defendant James Clark's May 13, 2016 Order Installed Me as the Only Person Who Can Control AdSTM Per The Order of the Court**

---

[1] In December 2019, I discovered that Defendant James Clark started to take Bing Ran's bribes beginning in 2015 and he, as a result of those bribes and in exchange, made several rulings in the divorce case against me.

32. Term 4[2] of the October 15, 2008 Amendment of the Decree of Divorce states: "Yue shall be the President and Secretary of AdSTM, ... Yue ... cannot be fired and removed from these positions (unless with 100% voting stock)."

33. Term 4[3] of the October 15, 2008 Amendment of the Decree of Divorce also states: I am a member of the Board of Director in AdSTM representing my positions of the President and Secretary of AdSTM.

34. Term 5[4] of the October 15, 2008 Amendment of the Decree of Divorce states: "Yue shall delegate the AdSTM's management functions to Bing.  Yue has the right to turn down Bing's decisions.  However, if this happens, Bing shall come up with new decisions again until agreements are reached.  Yue's delegation and right cannot be remove for the life time of this agreement (unless with 2/3 of voting stock)..."

35. Term 7[5] of the October 15, 2008 Amendment of the Decree of Divorce states: "Yue and Bing shall have the same salary and bonus, other benefit and the profit distribution from AdSTM..."

36. Term 8[6] of the October 15, 2008 Amendment of the Decree of Divorce states: "Both Yue and Bing shall be signers of all AdSTM and its sub-companies' bank accounts..."

37. Term 3 of the October 15, 2008 Amendment of the Decree of Divorce states: "... Yue owns 51% (stock certificate #21)..."

---

[2] Term 4 is independent of how much AdSTM stock I or Bing Ran owns.
[3] Term 4 is independent of how much AdSTM stock I or Bing Ran owns.
[4] Term 5 is independent of how much AdSTM stock I or Bing Ran owns.
[5] Term 7 is independent of how much AdSTM stock I or Bing Ran owns.
[6] Term 8 is independent of how much AdSTM stock I or Bing Ran owns.

38. Term 12 of the October 15, 2008 Amendment of the Decree of Divorce states: "After… (…the date the last AdSTM's 8(a) contract is expired[7],), at Bing's option[8], Bing shall buy[9]additional 20 shares of AdSTM stocks from Yue at ten cents per share."

**Jen Kim ("Jen") Helping Herself in AdSTM and Moved from Quietly Competing with Bing to Taking Concrete Actions to Get Rid of Bing from AdSTM by Using Federal Agencies and by Suggesting Lawsuit Against Bing**

39. Jen started to work for AdSTM in early 2013.

40. When Jen interviewed with AdSTM, she cleverly hid from AdSTM her more than 14 years of prior history of misconducts in corporate financial management and government contracting.

41. Jen was very smart, in AdSTM: she did the cradle-to-grave administration of all contracts, she negotiated all of the subcontracts and contracts, she produced complete pricing strategies, she did all of the contract reporting and billing and invoicing and audit and for all aspects of the accounting and account payable and bank reconciliations and wire transfers and expense payments and foreign exchange, and above all, she kept 2 books for contract and finance, and she cleverly helped herself financially in AdSTM without her boss noticing anything.

---

[7] That date was September 30, 2012.

[8] Bing Ran did not exercise his this option to buy after the date of September 30 2012.

[9] In a separate location of the Decree of Divorce, Bing Ran was required to dedicate full time supporting me in AdSTM before he can exercise his options to buy stocks. Bing Ran did not dedicate full time supporting me in AdSTM.

42. Jen has high ambition and became competitive with her boss in every way. After he bought a more than a million-dollar house, she bought herself a $1,100,000 house for her and her son in 2017 in Fairfax county.

43. Jen felt restricted because Bing tried to keep a watchful eye on her.

44. So much AdSTM profit is generated each year and they all belong to Alice and Bing, Jen could not access that money freely but she wanted that profit because she felt she worked harder than anyone else, especially more than Alice or Bing or they combined.

45. Jen in 2013 strategized to take full control of AdSTM by eliminating Bing.

46. Jen and her network of people informed then collaborated with Federal agencies, in a little over 12 months, Federal agency started to interrogate Bing and forcing Bing to give up his CEO position in AdSTM.

47. Jen obtained Alice's divorce papers from the court, she also knew real AdSTM information was hidden from Alice for years.

48. Jen slid real AdSTM data under Alice's office door and suggested Bing be sued in court.

49. Federal agency's requirements against Bing and the court case against Bing exhausted Bing to a point that Jen almost have complete freedom in AdSTM and helped herself whatever she wanted financially, exactly the way she wanted to happen.

50. But in the summer of 2016, court decided Alice can come back to direct AdSTM's operation. At the same time, Bing himself and through others started to question more and more of Jen's conduct in AdSTM finances.

51. Jen decided to get rid of both Bing and Alice for good.

**Jen Used Fei Guan ("Fei") to File a Human Trafficking Case to Attempt to Get Rid of Bing and Alice from AdSTM by Imprison Them Both**

52. Alice's brother Fei worked for AdSTM.

53. Jen purposefully befriended Fei so they became very close personal friends.

54. Jen directed Fei to take legal actions against Bing and Alice, and some of those directions were given at the smoke spot outside of the building during their working hours.

55. Jen persuaded Fei to file a federal case in 2017 against Alice and Bing for human trafficking[10]. Prior to filing that case, Fei did not want to include his sister Alice, but Jen insisted on adding Alice as a defendant so Jen can have full control of AdSTM.

**After that Human Trafficking Case Was Dismissed Jen Persuaded Fei to File a QuiTam Case Against Four (4) Companies She Worked for and Against Those Companies' Owners**

56. Jen was a very capable woman, she did the same work for Qi Tech and Foredata and a joint venture as she did for AdSTM and at the same time as she worked for AdSTM.

57. For Qi Tech and Foredata and a joint venture, Jen did the cradle-to-grave administration of all contracts, she negotiated all of the subcontracts and contracts, she produced complete pricing strategies, she did all of the contract reporting and billing and invoicing and audit and for all aspects of the accounting and account payable and bank reconciliations and wire transfers and expense payments and foreign exchange, and very often, the workload was so much that she had to take work home and also enlist others outside of those companies to help her, these work allowed her to keep 2 books for contract and finance, and she cleverly helped herself financially in those companies without her bosses noticing anything.

---

[10] EASTERN DISTRICT OF VIRGINIA, case 1:17-cv-00332-JCC-IDD.

58. But working in those places made her feel restricted because she could not freely do what she wanted to do in these companies.

59. Jen was not happy about that human trafficking case because that case got dismissed.

60. Jen had access to all the key contract and financial data in those 4 companies, so she provided that information to Fei and she persuaded Fei to file a QuiTam lawsuit against these companies and all of these companies' owners.

61. Fei refused to include his sister as a defendant because his family relationship with his sister has been completely cut off by his sister after that human trafficking lawsuit was filed and he was already feeling ashamed of himself for filing that case, and because his sister had nothing to do with any of the data or events Jen wanted Fei to include in the QuiTam lawsuit.

**Jen Succeeded to Completely Get Rid of Bing from AdSTM by Using the QuiTam Lawsuit and By Her Other Strategies**

62. Soon after the QuiTam[11] lawsuit was filed, Jen and her network of people and the Federal government collaborated to remove Bing from AdSTM's Board of Director position.

63. Bing then caused AdSTM file a case against Fei[12].

64. AdSTM's case against Fei drained Fei significantly and Fei wanted to quickly quit the QuiTam lawsuit, but Jen promised Fei that she will get rid of Bing completely soon so she can take over the case against Fei and that case will go away.

---

[11] EASTERN DISTRICT OF VIRGINIA, case 1:18-cv-00795-CHH-JFA.
[12] EASTERN DISTRICT OF VIRGINIA, case 1:18-cv-00988-LO-TCB.

65. Jen was true to her words.  She and her network of people collaborated with Federal government to prohibit Bing from managing or making any decisions for AdSTM, to strip Bing's AdSTM email address with future monitoring activities implemented in AdSTM to ensure Bing does not break those rules.

66. Prior to government's monitoring site visit, Jen got her own brother into AdSTM and Qi Tech's server room, made modifications to the server and systems and re-activated Bing's email address.

67. When government came to AdSTM to do onsite visit, they discovered that Bing's email address was still active, the Federal person got mad and demanded Bing leave his AdSTM office and could not set his foot in AdSTM space again and that Bing can not use the power associated with his AdSTM stock in any way in controlling or managing AdSTM, or the government will take away all of AdSTM's contracts.

68. To save AdSTM's contracts, Bing complied.

69. Jen and her network of people worked with Mark Zaid who wrote a letter to the government accompanied by Jen's affidavit, the letter stated that Bing has completely left AdSTM, resigned all of his positions, and put his stock in a trust fund controlled by another person who does not represent Bing's interests.

70. By this time, Jen took all of the controls of AdSTM and she worked with Crowell and Moring lawfirm and her connections to Judge Ogridy to try to jointly dismiss the case against Fei.

71. By this time, somehow Alice discovered that Bing has resigned all of his positions, she started to manage AdSTM herself and she annoyed Jen when she asked Jen to provide her with AdSTM's contract and financial and human resource information.

72. Alice went to Crowell and Moring law firm by herself without informing Jen and Alice wanted to work with that law firm to get AdSTM removed from that QuiTam lawsuit.

73. Jen did not want to give any AdSTM's information to Alice so she refused to provide any and Jen and her network of people directed Crowell and Moring not to communicate with Alice.

74. Jen made decision for AdSTM, she and her network of people worked with Judge Ogridy and with Fei's lawyer to get the case against Fei dismissed. Fei was very relieved and could then refocus to work on the QuiTam lawsuit for Jen.

75. Jen helped Fei secure a new job, also helped Fei's wife secure her job.

76. Jen is hopeful that the QuiTam lawsuit will generate an amount of money for her through Fei that she has never seen before.

77. After QuiTam lawsuit was filed, Jen continues to completely control the contract and financials of all the companies named in the QuiTam lawsuit making her a very powerful person that she wanted to be. She plans to continue control those companies or to run any one of them down into ground as she wants to. So far, she made sure 2 of the companies are not in good standing with the Virginia state.

78. Jen was in a very powerful position in the QuiTam case because she controls both sides of the case: the Fei side and the side of all company defendants, she wants QuiTam lawsuit be settled for a large sum of money paid out of those company owners in exchange to stop the lawsuit so those owners can avoid going to jail.

**Jen's Complete Control of AdSTM and Her Removal of AdSTM's $7M/Year Contracts**

79. Jen established close relationships with other companies and formed a network of people who assist her prior to and while she worked for AdSTM.

80. At the time when Bing was removed from AdSTM in 2018, Jen and her network of people collaborated with Federal Government to remove $7M annual revenue worth of AdSTM contracts and handed those contacts to companies that provided Jen significant kickbacks.

81. With the use of these kickbacks and the money Jen freely helped herself from AdSTM and other companies, Jen's collaborative network of people to support her ambition grew bigger and bigger.

**Alice Tried to Control AdSTM and She Took $2.3M Out of AdSTM All Without Jen's Permission so Jen Successfully Got Two (2) Lawsuits Started Against Alice and Jen Bribed Judge Clerk and His Court and His People with Cash and with Benefit Purchased by Cash that Were Provided by Jen and by Jen's People in Return for Judge Clerk and His Court to Help Jen and to Help Jen's People by Ruling Against Alice**

82. In Jan or Feb 2019, Alice held some meetings and tried to control AdSTM and those events badly frustrated Jen.

83. The only money Alice can control in AdSTM was the money in the AdSTM's investment account that Jen had no access to.

84. Alice took $2.3M from AdSTM's investment account and deposited them all into her own personal bank accounts.

85. Alice also opened several AdSTM bank accounts and rented new office and hired new people all without Jen's permission.

86. Jen became so angered by Alice's actions, Jen physically went to the banks and

persuaded those banks to freeze the AdSTM accounts that Alice opened so Alice could

not operate her own AdSTM functions or pay her new employees.

87. Jen pressured Bing to file a case against Alice or she will get him with criminal charges

against him.

88. Jen paid Protorae law firm to use AdSTM to sue Alice.

89. Soon, Alice was sued in 2 lawsuits[13] in 2019.

90. Judge Clerk personally and his people personally and the Court Defendant received

bribery money in cash and in benefit purchased by bribery money that came from Jen and

from Jen's people, and he promised to rule against[14] Alice in those 2 cases[15][16].

---

[13] On February 19, 2019, Bing filed a Motion under the divorce case to prevent me from controlling and managing AdSTM and to deprive my $2.3M personal funds. Same demand was made in a AdSTM lawsuit against me in Alexandria Circuit Court case CL19001664.

[14] Upon reviewing Defendant James Clark's rulings, Judge Alston and two other judges in the Virginia Court of Appeal wrote that **the rulings resulted in my "personal, pecuniary, or property rights" in AdSTM be "adversely affected".**

[15] On February 27, 2019, I moved Defendant James Clark in the divorce case to enforce the October Amendment and for a Declaratory Judgment and an injunction to prevent Bing Ran from interfering with my control and management of AdSTM. Defendant Clark ruled against me. Defendant Clark did not provide any constitutionally required due process to adjudicate a Declaratory Judgment to resolve the controversy surrounding the Decree, he simply dismissed and denied my motion and petition for declaratory judgement altogether. He did so without due process. Defendant Clark also refused to enforce the Decree and dismissed my motion and petition to enforce the Decree. He did so without due process.

[16] I have rights per the Decree of Divorce. Decree has created a protected property and personal interests which include but not limited to my AdSTM stock, my cash assets stored in AdSTM, my right to control and manage AdSTM. The process of maintaining or removing such rights are protected by the constitution and federal law and laws. I also have my individual personal rights and personal property rights which include but not limited to my own cash assets, my right to the freedom of expression, of association, and of movement. However, in February 2019, Defendant Clark, without notice, suddenly, out of the blue, Defendant James C Clark, without any constitutionally required due process, declared I am 49% owner and enjoined me from

91. Judge Clerk was true to his words and he and his court ruled to get the $2.3M removed[17] from Alice's personal banks and sent that $2.3M into AdSTM accounts so Jen can control the $2.3M[18].

92. Judge Clerk was true to his words and he and his court ruled to keep Alice away from AdSTM so Jen can control AdSTM without Alice overseeing her.

―――――――――――――――

representing to the 3rd party that I am the 51% majority shareholder until further order of the court, indicating that one day in the future he will provide prospective relief to deem I am 51%. Defendant James C Clark, without using constitutionally required due process, removed all my interests and rights that are guaranteed by the Decree and that are protected by the constitution and federal law and laws. He deprived my rights to control and manage AdSTM. Defendant Clark, without using constitutionally required due process, harassed and discriminated me in my workplace, deprived me of freedom of speech, freedom of movement and freedom of association, by stating I cannot access any AdSTM office or space, cannot communicate with my employees or attorneys or clients until further order of the court, indicating that one day in the future he will provide prospective relief to give my rights back and to remove the restraint of freedom he put on me. Defendant James C Clark deprived my personal property in the amount of $2.3M without due process. Defendant James C Clark ruled so, so that $2.3M was sent to AdSTM to be controlled by Jen Kim who in turn used that money to pay Defendant James Clark and others on her network who support her schemes.

[17] Defendant James Clark ruled to permit Bing Ran to keep the more than $2,700,000 taken from AdSTM as loans in the Divorce case, but he ordered to reach my personal banks to remove the $2.3M I borrowed from AdSTM with concrete promissory notes (at that time, some loan pay back installments have already been deposited into to AdSTM bank accounts by Alice Guan, per the promissory notes) (I could not make the after-tax $2.3M distribution to myself because the October Amendment requires same distribution be made to me and to Bing Ran. At that time, Bing Ran had already withdrew more than $2.7M out of AdSTM as loans that were permitted by Defendant James Clark. Bing Ran used loans not distribution to prevent sending the same amount to me).

[18] All $2.3M that was taken out of my personal accounts were sent to AdSTM's fidelity investment account. Jen Kim then moved the $2.3M out of AdSTM investment account to a location unknown to me. I moved Defendant Clark for an order to return the $2.3M back into AdSTM's fidelity account and then freeze that account so the $2.3M can be safely kept there. Defendant Clark denied my motion. Defendant Clark denied my motion because he needed the $2.3M to be available to pay him money and gifts in exchange for his conducts against me.

## Jen Became AdSTM's President and Controls AdSTM and the QuiTam Case Completely

93. Jen successfully had Federal agency kept Bing away from AdSTM and had court kept Alice away from AdSTM.

94. Jen has been controlling AdSTM without anyone over her head to oversee what she does, and she became the President, the secretary, and the treasure of AdSTM.

95. Jen since then has made sure that AdSTM made no profit so Bing and Alice do not have profit earnings from AdSTM.

96. Jen controls the QuiTam lawsuit from both sides: from Fei's side and from AdSTM side, she has been working to negotiate a large money settlement for her and for Fei to enjoy with the threat to send those company owners to jail if no settlement is agreed upon by those company owners.

## Jen Paid Judge Ogridy in Exchange so Judge Ogridy Kick the Original Judge Out of the Case Alice Filed so Judge Ogridy Can Rule to Throw Out Alice's Case

**97.** Jen by accident leaked the bribery scheme to Alice in late 2019.

**98.** Alice filed a case[19] against Jen and others.

---

[19] EASTERN DISTRICT OF VIRGINIA, Case 1:21-cv-00752-RDA-TCB, filed on June 23, 2021 (the "2021 action"). After November 15, 2021, the court back docketed a Nov 2, 2021 Note such as this: District Judge Liam O'Grady randomly added. District Judge Rossie D. Alston, Jr no longer assigned to case. (jlan) (Entered: 11/02/2021). After Nov 15, 2021, the case name as well as all headings of all filings in the case were changed into: Case 1:21-cv-00752-LO-TCB. 2 weeks later on November 30, 2021, Defendant Liam Ogrady dismissed the case.

17

**99.** Jen and her network of people again paid Judge Ogridy  and Judge Ogridy 's people bribery in cash and in benefit purchased by cash to get him to help Jen and others by having Judge Ogridy  going into that case to rule against Alice.

**100.** Judge Ogridy  and his people took the bribery money that came from Jen and from Jen's people, Judge Ogridy  promised to help Jen.

**101.** Judge Ogridy  bumped that original judge out of the case, then Judge Ogridy ruled against Alice.

**Jen and Her Network of People and Judge Clerk and Judge Ogridy Collaborated together to Throw Alice's Case Out**

102. Jen and her network of people collaborated with Judge Ogridy with the help and assistance from Judge Clerk and his people.

103. Jen had to spend more money to pay those judges and to pay their people to get that collaboration moving so that Alice's case could be thrown out.

**Defendant James Clark and His People and the Court Defendant Accepted Bribery Money and Accepted the Benefit Purchased from Bribery Money That Was Sent by Jen in Exchange for Him and the Court Defendant to Deprive My Constitutionally and Federally Protected Rights**

104. In December 2019, it was discovered in Protorae office space that Jen and her network of people had bribed Defendant James Clark and Court Defendant with cash bribes and with benefits purchased with cash bribes in exchange for Defendant James

Clark to rule against me earlier in 2019 in the Alexandria Circuit Court case CL19001664 and case CL07003662.

105.    I have rights per the Decree of Divorce.  Decree has created a protected property and personal interests which include but not limited to my AdSTM stock, my cash assets stored in AdSTM, my right to control and manage AdSTM. The process of maintaining or removing such rights are protected by the constitution and federal law and laws.

106.    I also have my individual personal rights and personal property rights which include but not limited to my own cash assets, my right to the freedom of expression, of association, and of movement.

107.    Jen Kim and her network of people abused the process by the utilization of case CL19001664 and case CL07003662 to get rid of my rightful control of AdSTM and to deprive my $2.3M and my 2% of AdSTM stock.

108.    On February 27, 2019, I moved Defendant James Clark and Court Defendant in the divorce case to enforce the October Amendment and for a Declaratory Judgment and an injunction to prevent Bing Ran from interfering with my control and management of AdSTM.  Defendant Clark ruled against me. Defendant Clark and Court Defendant did not provide any constitutionally required due process to adjudicate a Declaratory Judgment to resolve the controversy surrounding the Decree, he simply dismissed and denied my motion and petition for declaratory judgement altogether.  They did so without due process.

109.    Defendant Clark and Court Defendant also refused to enforce the Decree and dismissed my motion and petition to enforce the Decree.  They did so without due process.

110.     In February 2019, without notice, suddenly, out of the blue, Defendant James C

Clark and the Court Defendant, without any constitutionally required due process,

declared I am 49% owner and enjoined me from representing to the 3rd party that I am the

51% majority shareholder until further order of the court, indicating that one day in the

future he will provide prospective relief to deem I am 51%.

111.     Defendant James C Clark and Court Defendant, without using constitutionally

required due process, removed all my interests and rights that are guaranteed by the

Decree and that are protected by the constitution and federal law and laws. They deprived

my rights to control and manage AdSTM without due process.

112.     Defendant Clark and Court Defendant, without using constitutionally required due

process, harassed and discriminated me in my workplace, deprived me of freedom of

speech, freedom of movement and freedom of association, by stating I cannot access any

AdSTM office or space, cannot communicate with my employees or attorneys or clients

until further order of the court, indicating that one day in the future he and the Court

Defendant will provide prospective relief to give my rights back and to remove the

restraint of freedom he put on me.

113.     Defendant James C Clark and Court Defendant deprived my personal property in

the amount of $2.3M[20] without due process.  Defendant James C Clark and Court

Defendant ruled so, so that $2.3M was sent to AdSTM to be controlled by Jen Kim who

_____

[20] Defendant James Clark ruled to permit Bing Ran to keep the more than $2,700,000 taken from
AdSTM as loans in the Divorce case when Bing Ran did not even have promissory notes, but he
ordered to reach Alice Guan's personal banks to remove the $2.3M Alice borrowed from
AdSTM with concrete promissory notes (at that time, some loan pay back installments have
already been deposited into to AdSTM bank accounts by Alice Guan, per the promissory notes,
so the total loan amount was less than the original principal of $2.3M, but Defendant James
Clark ordered the removal of $2.3M anyhow).

in turn used that money to further pay bribes to Defendant James Clark and his people and his court.

114.  All $2.3M that was taken out of my personal accounts were sent to AdSTM's fidelity investment account. Jen Kim then moved the $2.3M out of AdSTM investment account to a location unknown to me.  I moved Defendant James Clark and Court Defendant for an order to return the $2.3M back into AdSTM's fidelity account and then freeze that account so the $2.3M can be safely kept there.  Defendant James Clark and Court Defendant denied my motion.  Defendant James Clark and Court Defendant denied my motion because they needed the $2.3M to be available to pay additional bribes to him and his people him and his court as the compensation for their ruling that they made against me.

115.  Jen and her network of people not only conspired and illegally took control of my company, they used my own company to sue me, they also used my assets in my own company to financially support the lawsuit against me and to support their bribery and corruption activities and to further deprive my rights.

116.  Defendant James Clark as an individual acted in violation of the due process requirements of the Constitution and federal law, and laws, leading to the 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

117.  Defendant James Clark in his capacity as the judge and Court Defendant acted, in the absent of jurisdiction, also in the absent of due process, violated the Constitution and federal law, and laws, leading to the 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

118.    The deprivation of my freedom of speech and freedom of association and freedom

of movement as well as the workplace harassment and discrimination, the deprivation of

my rights per the Decree all resulted from the defendants, without due process which is

protected by the Constitution and by the Federal Law, has contributed to reduced work

productivity, the extreme isolation, and the low morale in work environment, all of which

negatively impacted my physical and mental health.

119.    The deprivation of my rights to control and to manage AdSTM, without due

process, has caused the devaluation of my assets in AdSTM and has caused reduction of

my profit earning from AdSTM, and negatively impacted my physical and mental health.

120.    Defendants James Clark and Court Defendant utilized their official seat  and

position but carried out conducts not within the prescribed duties, for the prescribed

duties does not include breaking or violating the Constitutions or federal laws or laws or

engage in corruptive acts or taking bribe money or taking the benefit purchased with

bribe money in exchange to rule a case in a certain particular way.

121.    The conduct Defendants James Clark and Court Defendant carried out were

without notice, a situation that rid any jurisdiction they may have had over the cases.

122.    Defendants James Clark and Court Defendant took bribes and engaged in

corruptions to deliver a rulings that favored the briber Jen Kim and her network of

people, a conduct ridding any jurisdiction they may have had over the cases.

**123.**    Due to Defendants Jen Kim and James Clark's and Court Defendant's unlawful

conducts, and without due process, I have completely lost my rights to manage and

control my company AdSTM and I have lost more than $2.3 millions of my own

properties, I lost 2% of my AdSTM stock, I have lost the values of my shares of the

AdSTM stock, and I have lost the continuing earning profit in AdSTM that I would have earned if these defendants did not act the way they did; I also incurred attorney fee and cost and expense to defend myself in legal cases that arose out of these defendants' actions; I lost my freedom; I lost profit due to defendants causing unapproved AdSTM expenses, lost contracts, lost employees, lost Clearance, lost opportunity to gain contract, increased expenses for AdSTM without authority, and their actions that tarnished the reputation of AdSTM and defamed my name and reputation.  I continue suffer injuries and I will continue suffer those injuries in the future.

**Defendant Liam O'Grady's and His People Accepted Bribery Money That Was Sent by Jen in Exchange for Him to Insert Himself into the Case I Filed and to Deprive My Constitutionally and Federally Protected Rights While He Acted Deceptively**

124.    On June 23, 2021, I filed in EASTERN DISTRICT OF VIRGINIA case1:21-cv-00752 and I demanded Jury trial.

125.    Judge Alston presided over the case.

**126.**    No party requested to recuse Judge Alston or switch Judge Alston out of the case.

**127.**    On November 15, 2021, Judge Alston was still presiding over the case and the docket still showed his initial in the case number and all filed documents had his initial in the header of each page.

**128.**    Sometime after November 15, 2021, the court back dated an event and inserted into November 2, 2021 a line item to announce Defendant Liam O'Grady took over the case.  The court wrote this: " District Judge Liam O'Grady randomly added. District Judge Rossie D. Alston, Jr no longer assigned to case. (jlan) (Entered: 11/02/2021)"

23

129.     Court's entry for November 2, 2021 stating "randomly" is not true because
Defendant Liam O'Grady was not randomly added to the case.

130.     Defendant Liam O'Grady was added to the case and Judge Alston was removed
from the case because Defendant Liam O'Grady and his people have had
communications with case1:21-cv-00752's defendants and those defendants' people;
Defendant Liam O'Grady has agreed to accept bribery moneys originated from Jen Kim
and Jen Kim's network of people in exchange for him to get rid of the case.

131.     On November 23, 2021, I moved the court to bring back Judge Alston to the case.
Defendant Liam O'grady ignored my motion.

132.     One week later on November 30, 2021, Defendant Liam O'Grady entered an
order dismissing the case with prejudice.

**133.**     In his order, Defendant Liam O'Grady self-created a claim to state that: the
money transfer between the defendants in the 2021 action is limited to "financial
contribution"[212223] only, clearly indicating that the money provided by the defendants in

---

[21] Defendant Liam O'Grady also implied that Defendant James Clark having the benefit of
having such "financial contribution" did not in any way influence Defendant James Clark to rule
against me.

[22] Defendant Liam O'Grady's self-created claim did not include bribery money (in cash form and
in other forms) received by Defendant James Clark himself and by Defendant James Clark's
people themselves or by Court Defendant, these bribery money are not any part of Defendant
Liam O'Grady's defined "financial contribution".

[23] Furthermore, Defendant Liam O'Grady's self-created claim did not include "financial
contribution" benefitted by Defendant James Clark and by Defendant James Clark's people and
Court Defendant that eventually resulted in an exchange for Defendant James Clark and Court
Defendant to rule against me.  Thus, any "financial contribution" benefitted by Defendant James
Clark and by Defendant James Clark's people and Court Defendant that eventually resulted in an
exchange for Defendant James Clark and Court Defendant to rule against me is also not part of
Defendant Liam O'Grady's defined "financial contribution".

the 2021 action was sent to support Official Defendants' campaigns for elections or re-elections, nothing else.

**134.**     In his order, Defendant Liam O'Grady self-created a claim to state that: the alleged violation is limited to "violation of Decree of Divorce" only and he defined such violation as a violation of state law only.

**135.**     In his order, Defendant Liam O'Grady self-created a claim to state that: the relief sought is to perform appellant review of the state court orders only.

136.     Defendant Liam O'Grady self-created his claim then proceeded to dismiss his claim with prejudice in the same order on November 30, 2021, he did not provide notice to me and did not provide due process to me regarding the claim he self-created.

137.     Defendant Liam O'Grady did not consider any of my final responses to defendants' motion to dismiss.

138.     Defendant Liam O'Grady acted as if my final responses to defendants' motion to dismiss did not exist.

139.     Defendant Liam O'Grady listed the documents he reviewed prior to him deciding to dismiss the claim he self-created with prejudice, my final responses to defendants' motion to dismiss did not appear on his list.

140.     I have filed into the court docket detailed disputed facts documents.

141.     Defendant Liam O'Grady did not consider any of my detailed disputed facts documents.

142.     Defendant Liam O'Grady acted as if my detailed disputed facts documents did not exist.

143.    Defendant Liam O'Grady listed the documents he reviewed prior to him deciding to dismiss the claim he self-created with prejudice, my detailed disputed facts documents did not appear on his list.

144.    On September 8, 2021, I filed a motion for leave to file a 39-page 2nd Amended Complaint and that 39-page 2nd Amended Complaint was attached to the motion and as part of the motion filed personally in the Clerk's office.

145.    Defendant Liam O'Grady listed the documents he reviewed prior to him deciding to dismiss the claim he self-created with prejudice, my motion for leave to file a 39-page 2nd Amended Complaint did not appear on his list.

146.    Defendant Liam O'Grady listed the documents he reviewed prior to him deciding to dismiss the claim he self-created with prejudice, my 39-page 2nd Amended Complaint did not appear on his list.

147.    Thus, Defendant Liam O'Grady intentionally did not review any of my above-mentioned filings.  Yet, Defendant Liam O'Grady attempted to cover his track by falsely stating that: "Mindful that Plaintiff is proceeding pro se, this Court liberally construes her filings. Jackson v. Lightsey, 775 F.3d 170, 177 (4th Cir. 2014))" which is a deceptive statement.

148.    With respect to Defendant James Clark and Court Defendant in the 2021 action, Defendant Liam O'Grady dismissed the claim he self-created against Defendant James Clark and Court Defendant based on lack of subject matter jurisdiction.

149.    With respect to the Court Defendants in the 2021 action, Defendant Liam O'Grady dismissed the claim he self-created against the Court Defendants based on

failure to state a claim due to his self-created claim did not contain any allegation of violation of Federal law or any violation of the Constitution.

150.    Defendant Liam O'Grady wrote his order by first self-creating his claim then proceeding to dismiss his self-created claim with prejudice, after that, he deemed all my motions filed as moot without considering or discussing any content or any aspects or any part contained in any of my those motions.

151.    After I appealed[24] Defendant Liam O'Grady's order, O'Grady directed the court docket the notice of appeal but do not include his order that was attached to the notice of appeal.

152.    Fourth Circuit denied my motion to correct such incorrectly docketed Notice of Appeal, it affirmed District Court' decision without offering any discussion on merit.

153.    One plausible reasons for Fourth Circuit to affirm district court's decision was that the notice of appeal was docketed without Defendant Liam O'Grady's order which was an alteration directed by Defendant Liam O'Grady.

154.    Defendant Liam O'Grady directed the alteration of the properly filed Notice of Appeal. His such action plausibly has caused Fourth Circuit affirm his order, his such action has violated the equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment.

_____

[24] The petition to the SCOTUS is currently pending in case 22-334, but not under 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

155. Defendant Liam O'Grady mooted all of my claims after he dismissed his own self-established claim with prejudice to prevent my claims from residing under the same specific legal case 1:21-cv-00752, his such conduct and actions and order violated the equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment under legal case 1:21-cv-00752.

156. Defendant Liam O'Grady did not review and did not consider much less to construe much less to liberally construe my aforementioned documents that were filed at least 11 weeks prior to him entering his order, his such conduct and actions and order violated the equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment under the legal case 1:21-cv-00752.

157. In short, Defendant Liam O'Grady had denied any opportunity for the claims or the issues I filed in case 1:21-cv-00752 to be raised in that case. He also failed to resolve and failed to make any attempt to resolve any of the disputed issues of fact that I properly presented before the court in the 2021 action. He did not give me any opportunity, let alone any full and fair opportunity, to litigate anything in that 2021 action.

158. Defendant Liam O'Grady dismissed his self-established claim without having Jury trial on the issue of "financial contributions" (that he defined to be the limiting aspects of his self-created claim) and on the issue of the disputed facts, his such conduct and actions and order violated the Seventh Amendment's right to Jury trial.

159.     Defendant Liam O'Grady committed the aforementioned violation of the
Constitutions and Federal Laws and he deprived my rights that are protected by those
Constitution and Federal laws.

160.     Defendant Liam O'Grady committed the aforementioned violation of the
Constitutions and Federal Laws and he deprived my rights that are protected by those
Constitution and Federal laws under the circumstances of his taking bribery money
originated from Jen Kim and from Jen Kim's network of people and of his involvement
in corruption.

161.     Defendant Liam O'Grady utilized his official seat but carried out conducts not
within the prescribed duties, for the prescribed duties does not include breaking or
violating constitutions or federal laws or laws or engage in corruptive acts or taking bribe
money in exchange to rule a case in a certain particular way.

162.     The conduct Defendant Liam O'Grady carried out were without notice, a situation
that rid any jurisdiction he may have had over the case.

163.     Defendant Liam O'Grady took bribes and engaged in corruptions to deliver a
ruling that favors the briber Jen Kim and her network of people, a conduct ridding any
jurisdiction he may have had over the case.

**164.**     Due to Defendants Jen Kim and Defendant Liam O'Grady's unlawful conducts,
and without due process, I have incurred cost and expenses in the appeal and the petition
associated with Defendant Liam O'Grady's order.

165.     Defendants Jen Kim and Defendant Liam O'Grady's unlawful conducts, and
without due process, has negatively impacted my physical and mental health.

166.     A case based on the above facts was filed in the District Court for the Eastern

District of Virginia but that court and Judge Liam O'Grady did not want to docket the

case.  When the process server made additional trips to the court and inquired why the

case was not docketed, the answer was: the case can not be adjudicated in the same court

as the court that is sued in the case.

167.     After a case based on facts through #165 was filed in this court under case

number 3:23-398-OAW, Plaintiff informed the District Court for the Eastern District of

Virginia that such case in the District Court of Connecticut was filed.

168.     Then the Fourth Circuit Court of Appeal directed the District Court for the

Eastern District of Virginia to docket the case Plaintiff filed earlier which the District

Court for the Eastern District of Virginia had previously refused to docket, and informed

the District Court for the Eastern District of Virginia that it and the District Court for the

Eastern District of Virginia  shall rule against that Plaintiff.

169.     In Late May and in early June 2023, Defendant Liam O'Grady provided input that

was used by another district court to form an order that is currently on appeal in the First

Circuit Court of Appeal with a case number 23-1519 docketed on June 23, 2023.


**This Complaint in This Instant Case**

170.     This Complaint is an actual case and is an actual controversy.  As stated in the

above paragraphs, I have suffered and continue suffer, the injuries and damages are on-

going, my future rights and property are threatened, this actual injury is traceable to all of

the defendants' conducts, and likely to be redressed by a favorable judicial decision in the
federal court.

171.     Alexandria Circuit Court case CL19001664 is a sham.  It was filed on behalf of
AdSTM by Jen Km and Jen Kim's network of people without my approval.  case
CL19001664 was stayed by Defendant James Clark in 2019.  Case CL19001664 has not
reached final judgement.

172.     Motion filed by Bing Ran in 2019 in Alexandria Circuit Court case CL07003662
was filed illegally and without any standing.  It has reached the SCOTUS in case 21-331,
but not under 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.  Yet, Alexandria
Circuit Court case CL07003662 is a divorce case which does not have final judgement.

173.     None of the defendants in this instant case are any parties or privities of any party
in Alexandria Circuit Court case CL19001664 and/or case CL07003662.

174.     This case is not to review any of the orders in Alexandria Circuit Court case
CL19001664 and/or case CL07003662.  None of those orders are provided in this
Complaint.

175.     Here in this instant case in federal court, I am not seeking to take an appeal of an
unfavorable state-court decision to this court.

176.     This instant case is Not to litigate ownership.  Ownership issue has no bearing
whatsoever for AdSTM control or management or my freedom or my property of $2.3M.
Ownership does nothing more than determining how much proceeds Bing Ran or I will
receive when AdSTM is sold in the future.  Nothing more.

177.     This instant case is to state that my rights provided by the Decree of Divorce are
protected by federal constitution and statutes and laws, as stated above.

178.     This instant case is to state that I have rights that are protected by federal laws and by the Constitution and statutes and laws as stated above and below.

179.     This instant case is to state that Defendants' conducts have violated the aforementioned and below stated federal law, the Constitution, statutes and laws, and their conducts have created cause of actions for 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

180.     Therefore, here in this case in this court, I am litigating 42 U.S. Code § 1983 and 18 U.S. Code § 242 created cause of action for the deprivation of my rights, privileges, and immunity secured by the Constitution and federal laws (for example, the lack of notice and lack of due process when those rights were deprived).

181.     In this case in this court, I am also litigating fraud, tort, abuse of process, civil conspiracy, business conspiracy, corruption, etc. as seen in later sections.

182.     I seek prospective relief from Defendant James Clark as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242.

183.     I seek Declaration Judgement as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242.

184.     I seek damages as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242 from all defendants who acted as individuals.

185.     I seek damages for civil conspiracy and business conspiracy. I seek damages from abuse of process and other cause of actions.

186.     In the instant case, I did not claim state court decision caused me injury, but rather I alleged defendants' conduct deprived my federally protected and secured rights, my Constitutional protected rights, my privileges and immunities as stated above and below.

187.    In this instant case, I am not complaining about injuries caused by state-court judgments rendered before this court's proceedings commenced, I am not inviting this court to review those judgments, and I am not asking this court to reject those judgments.

188.    Defendants who acted as individuals conspired, and also with or without them bribing public officials, they took other wrongful acts, thus their (as Private party's) joint participation with state officials in deprivation of constitutional right (or federal rights) proves sufficient to hold them liable under 42 U.S. Code § 1983 and 18 U.S. Code § 242; They as private actors have acted together with and obtained significant aid from state officials.

189.    Therefore, defendants who are individuals are state actors because they worked with a judges and court to achieve their ultimate goals.

190.    Here, business conspiracy arose because two or more persons combined, associated, agreed, mutually undertook and concerted together for the purpose of willfully and maliciously injuring me in my reputation, trade, business, or profession by any means whatsoever that has been stated in this Complaint.

191.    I suffered injuries due to the defendants' conducts and the injuries are on-going.

192.    Defendants James Clark and Court Defendants and Liam O'Grady acted without notice and without due process.  Thus, jurisdiction was not available when notice was not provided.

193.    Also, because when state or federal officials engaged in bribery, they no longer have any jurisdiction adjudicating those state or federal cases.

194. It is impossible to have due process when there is no jurisdiction, thus 42 U.S. Code § 1983 and 18 U.S. Code § 242 claim also exists for lack of due process due to lack of jurisdiction.

195. Even if there was jurisdiction, which is not the case, for the reasons explained in the earlier sections, there clearly lacked due process, thus 42 U.S. Code § 1983 and 18 U.S. Code § 242 claim exists anyhow.

196. The violation of the Constitution, federal laws, other laws and statutes by the defendants' conduct continues through today, I continue sustain injuries and the injuries are on-going.

197. Defendants' unlawful conducts changed me, from a person who in early 2019 can lead and control my company to a person who cannot approach company premise, cannot utter a word or a letter to anyone in the company, cannot in any way maintain any association with anyone in the company, a company I founded, established, and prospered through my leadership and management capabilities.

198. Defendants' unlawful conducts also changed me, from a person who has prospered financially through the $2.3M profit saved over 10 years to be totally stripped of that personally property, and this $2.3M personal property as well as my rightful on-going profit in AdSTM that should be earned in the on-going contracts have been spent and controlled by Jen Kim who has no legal rights to do so.

199. These injury and suffering are ongoing, Defendant James Clark and Court Defendant indicated that they will one day issue an order to end the on-going injury, but that has not happened.

200.    Furthermore, Defendant James Clark and Court Defendant and Defendant Liam
        O'Grady did not follow fundamentally fair procedures before their conducts subjected me
        to damages and injuries, before I was deprived of property and liberty interest. Their
        conducts also infringed substantive due process in depriving my property and liberty
        regardless of procedures used, the very liberty of going to workplace, to associate with
        team members and employees, to interact with clients, to have the ability to express, the
        liberty that is deeply rooted in this nation's history and tradition by default and implicit in
        the concept of ordered liberty. These conduct on prohibition is so outrageous and
        constitutionally arbitrary that is so egregious as to shock the conscience.

**No Court Has Considered the Merits of the Claims or the Issues Contained in this
Complaint in the Instant Case thus Claim Preclusion or Issue Preclusion Do Not Apply
to the Complaint in the Instant Case**

201.    Defendant Liam O'Grady's dismissal order in the 2021 action was based on lack
        of jurisdiction with respect to Defendant James Clark and Court Defendant. Dismissal
        for lack of jurisdiction does not have claim or issue preclusive effect because they are not
        decided on the merits.

202.    Defendant Liam O'Grady's dismissal order in the 2021 action was based on
        failure to state a claim with respect to Court Defendant only and that order was based on
        alleged violations was limited to the violation of the Decree of Divorce only which
        Defendant Liam O'Grady formulated it as a violation of state law only but not a violation
        of Federal law or the violation of the Constitution.

203.    The claims contained in this Complaint in the instant case alleges violation of
        Federal Laws and violation of the Constitution. Thus, Defendant Liam O'Grady's order

in the 2021 action does not contain any valid decision on the merits of and thus it does not have claim or issue preclusive effect on the claims contained in this Complaint in the instant case.

204.     Also, injury as stated in this instant case depends on full accounting. Full accounting was not performed in the 2021 action. Thus, this injury was not yet present in the 2021 Action. Therefore, claims alleged this instant case was not ripe for adjudication in the 2021 action if injury was not yet present at that time even if any alleged action of the defendant foretells legal injury to me.

205.     In addition, the claims contained in this Complaint in the instant case rest upon events that occurs or will occur or has occurred after Defendant Liam O'Grady's dismissal order in the 2021 action.

206.     Therefore, the claims contained in this Complaint in the instant case were not ripe at the time when Defendant Liam O'Grady entered his order in the 2021 action, thus Defendant Liam O'Grady's dismissal order in the 2021 action does not have preclusive effect on the claims or on the issues contained in this Complaint in the instant case.

207.     Furthermore, the claims contained in this Complaint in the instant case also include new facts and new defendant and it also include changed circumstance.

208.     The claims contained in this Complaint in the instant case are also premised on different transaction from the claim Defendant Liam O'Grady dismissed in the 2021 action.

209.     The action in the instant case arises out of the transaction and occurrence that was not the subject matter of the specific claim Defendant Liam O'Grady dismissed in the 2021 action.

210.     Therefore, the claim contained in this Complaint in the instant case (the "2023 claim") has never been adjudicated by any court, no court has considered the merits of the claims or the issues contained in this Complaint in the instant case.

211.     Hence, Defendant Liam O'Grady's dismissal order in the 2021 action does not have claim or issue preclusive effect on the claims or the issues contained in this Complaint in the instant case.

212.     Finally, claim or issue preclusion shall not apply when fairness and justice would not support it because such application would defeat the ends of justice.

### COUNT I. 42 U.S. Code § 1983 and 18 U.S. Code § 242 Claims

### (As to All Defendants)

213.     I incorporate all of the Parties, Jurisdictions and Venues, and Allegations set forth in the forgoing paragraphs 1-212 as though fully alleged herein.

214.     Defendant Liam O'Grady self-created his claim then proceeded to dismiss his claim with prejudice in the same order on November 30, 2021, he did not provide notice to me and did not provide due process to me regarding the claim he self-created.

215.     Defendant Liam O'Grady directed the alteration of the properly filed Notice of Appeal.  His such action plausibly has caused Fourth Circuit affirm his order, his such action has violated the equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment.

216.     Defendant Liam O'Grady mooted all of my claims after he dismissed his own self-established claim with prejudice to prevent my claims from residing under the same specific legal case 1:21-cv-00752, his such conduct and actions and order violated the

equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment under legal case 1:21-cv-00752.

217.    In short, Defendant Liam O'Grady had denied any opportunity for the claims or the issues I filed in case 1:21-cv-00752 to be raised in that case.  He also failed to resolve and failed to make any attempt to resolve any of the disputed issues of fact that I properly presented before the court in the 2021 action.  He did not give me any opportunity, let alone any full and fair opportunity, to litigate anything in that 2021 action.

218.    Defendant Liam O'Grady did not review and did not consider much less to construe much less to liberally construe my aforementioned documents that were filed at least 11 weeks prior to him entering his order, his such conduct and actions and order violated the equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment under the legal case 1:21-cv-00752.

219.    Defendant Liam O'Grady dismissed his self-established claim without having Jury trial on the issue of "financial contributions" (that he defined to be the limiting aspects of his self-created claim) and on the issue of the disputed facts,  his such conduct and actions and order violated the Seventh Amendment's right to Jury trial.

220.    Defendant Liam O'Grady committed the aforementioned violation of the Constitutions and Federal Laws and he deprived my rights that are protected by those Constitution and Federal laws.

221.    Defendant Liam O'Grady committed the aforementioned violation of the Constitutions and Federal Laws and he deprived my rights that are protected by those

Constitution and Federal laws under the circumstances of his taking bribery money originated from Jen Kim and from Jen Kim's network of people and of his involvement in corruption.

222.    Defendant Liam O'Grady utilized his official seat but carried out conducts not within the prescribed duties, for the prescribed duties does not include breaking or violating constitutions or federal laws or laws or engage in corruptive acts or taking bribe money in exchange to rule a case in a certain particular way.

223.    The conduct Defendant Liam O'Grady carried out were without notice, a situation that rid any jurisdiction he may have had over the case.

224.    Defendant Liam O'Grady took bribes and engaged in corruptions to deliver a ruling that favors the briber Jen Kim and her network of people, a conduct ridding any jurisdiction he may have had over the case.

**225.**    Due to Defendants Jen Kim and Defendant Liam O'Grady's unlawful conducts, and without due process, I have incurred cost and expenses in the appeal and the petition associated with Defendant Liam O'Grady's order.

226.    Defendants Jen Kim and Defendant Liam O'Grady's unlawful conducts, and without due process, has negatively impacted my physical and mental health.

227.    Jen and her network of people not only conspired and illegally took control of my company, they used my own company to sue me, they also used my assets in my own company to financially support the lawsuit against me and to support their bribery and corruption activities and to further deprive my rights.

228.     Defendant James Clark as an individual acted in violation of the due process requirements of the Constitution and federal law, and laws, leading to the 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

229.     Defendant James Clark in his capacity as the judge and Court Defendant acted, in the absent of jurisdiction, also in the absent of due process, violated the Constitution and federal law, and laws, leading to the 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

230.     The deprivation of my freedom of speech and freedom of association and freedom of movement as well as the workplace harassment and discrimination, the deprivation of my rights per the Decree all resulted from the defendants, without due process which is protected by the Constitution and by the Federal Law, has contributed to reduced work productivity, the extreme isolation, and the low morale in work environment, all of which negatively impacted my physical and mental health.

231.     The deprivation of my rights to control and to manage AdSTM, without due process, has caused the devaluation of my assets in AdSTM and has caused reduction of my profit earning from AdSTM, and negatively impacted my physical and mental health.

232.     Defendants James Clark and Court Defendant utilized their official seat and position but carried out conducts not within the prescribed duties, for the prescribed duties does not include breaking or violating the Constitutions or federal laws or laws or engage in corruptive acts or taking bribe money or taking the benefit purchased with bribe money in exchange to rule a case in a certain particular way.

233.     The conduct Defendants James Clark and Court Defendant carried out were without notice, a situation that rid any jurisdiction they may have had over the cases.

234.     Defendants James Clark and Court Defendant took bribes and engaged in corruptions to deliver rulings that favored the briber Jen Kim and her network of people, a conduct ridding any jurisdiction they may have had over the cases.

**235.**     Due to Defendants Jen Kim and James Clark's and Court Defendant's unlawful conducts, and without due process, I have completely lost my rights to manage and control my company AdSTM and I have lost more than $2.3 millions of my own properties, I lost 2% of my AdSTM stock, I have lost the values of my shares of the AdSTM stock, and I have lost the continuing earning profit in AdSTM that I would have earned if these defendants did not act the way they did; I also incurred attorney fee and cost and expense to defend myself in legal cases that arose out of these defendants' actions; I lost my freedom; I lost profit due to defendants causing unapproved AdSTM expenses, lost contracts, lost employees, lost Clearance, lost opportunity to gain contract, increased expenses for AdSTM without authority, and their actions that tarnished the reputation of AdSTM and defamed my name and reputation.  I continue suffer injuries and I will continue suffer those injuries in the future.

236.     My personal interest, property interest, and pecuniary interest including but not limited to AdSTM control and management, my employment, opportunity for advanced education paid by my company, reputation of holding the officer and board positions and authority to do business with clients, physical well-being and health, benefit from my company, personal property, money, my freedom, etc., are sufficiently recognizable to demand due process protection.

237.    Defendants conduct has deprived me of the recognized liberty and property interest absent sufficient process surrounding the deprivation and their conduct has violated the Constitution and Federal laws.

238.    This Complaint is an actual case and is an actual controversy.  As stated in the above paragraphs, I have suffered and continue suffer, the injuries and damages are on-going, my future rights and property are threatened, this actual injury is traceable to all of the defendants' conducts, and likely to be redressed by a favorable judicial decision in the federal court.

239.    Alexandria Circuit Court case CL19001664 is a sham.  It was filed on behalf of AdSTM by Jen Km and Jen Kim's network of people without my approval.  case CL19001664 was stayed by Defendant James Clark in 2019.  Case CL19001664 has not reached final judgement.

240.    Motion filed by Bing Ran in 2019 in Alexandria Circuit Court case CL07003662 was filed illegally and without any standing.  It has reached the SCOTUS in case 21-331, but not under 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims. Yet, Alexandria Circuit Court case CL07003662 is a divorce case which does not have final judgement.

241.    None of the defendants in this instant case are any parties or privities of any party in Alexandria Circuit Court case CL19001664 and/or case CL07003662.

242.    This case is not to review any of the orders in Alexandria Circuit Court case CL19001664 and/or case CL07003662.  None of those orders are provided in this Complaint.

243.    Here in this instant case in federal court, I am not seeking to take an appeal of an unfavorable state-court decision to this court.

244. This instant case is Not to litigate ownership. Ownership issue has no bearing whatsoever for AdSTM control or management or my freedom or my property of \$2.3M. Ownership does nothing more than determining how much proceeds Bing Ran or I will receive when AdSTM is sold in the future. Nothing more.

245. This instant case is to state that my rights provided by the Decree of Divorce are protected by federal constitution and statutes and laws, as stated above.

246. This instant case is to state that I have rights that are protected by federal laws and by the Constitution and statutes and laws as stated above and below.

247. This instant case is to state that Defendants' conducts have violated the aforementioned and below stated federal law, the Constitution, statutes and laws, and their conducts have created cause of actions for 42 U.S. Code § 1983 and 18 U.S. Code § 242 claims.

248. Therefore, here in this case in this court, I am litigating 42 U.S. Code § 1983 and 18 U.S. Code § 242 created cause of action for the deprivation of my rights, privileges, and immunity secured by the Constitution and federal laws (for example, the lack of notice and lack of due process when those rights were deprived).

249. In this case in this court, I am also litigating fraud, tort, abuse of process, civil conspiracy, business conspiracy, corruption, etc. as seen in later sections.

250. I seek prospective relief from Defendant James Clark as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242.

251. I seek Declaration Judgement as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242.

252.    I seek damages as permitted by 42 U.S. Code § 1983 and 18 U.S. Code § 242 from all defendants who acted as individuals.

253.    I seek damages for civil conspiracy and business conspiracy. I seek damages from abuse of process and other cause of actions.

254.    In the instant case, I did not claim state court decision caused me injury, but rather I alleged defendants' conduct deprived my federally protected and secured rights, my Constitutional protected rights, my privileges and immunities as stated above and below.

255.    In this instant case, I am not complaining about injuries caused by state-court judgments rendered before this court's proceedings commenced, I am not inviting this court to review those judgments, and I am not asking this court to reject those judgments.

256.    Defendants who acted as individuals conspired, and also with or without them bribing public officials, they took other wrongful acts, thus their (as Private party's) joint participation with state officials in deprivation of constitutional right (or federal rights) proves sufficient to hold them liable under 42 U.S. Code § 1983 and 18 U.S. Code § 242; They as private actors have acted together with and obtained significant aid from state officials.

257.    Therefore, defendants who are individuals are state actors because they worked with a judges and court to achieve their ultimate goals.

258.    Here, business conspiracy arose because two or more persons combined, associated, agreed, mutually undertook and concerted together for the purpose of willfully and maliciously injuring me in my reputation, trade, business, or profession by any means whatsoever that has been stated in this Complaint.

259.    I suffered injuries due to the defendants' conducts and the injuries are on-going.

260.    Defendants James Clark and Court Defendants and Liam O'Grady acted without

notice and without due process.  Thus, jurisdiction was not available when notice was not

provided.

261.    Also, because when state or federal officials engaged in bribery, they no longer

have any jurisdiction adjudicating those state or federal cases.

262.    It is impossible to have due process when there is no jurisdiction, thus 42 U.S.

Code § 1983 and 18 U.S. Code § 242 claim also exists for lack of due process due to lack

of jurisdiction.

263.    Even if there was jurisdiction, which is not the case, for the reasons explained in

the earlier sections, there clearly lacked due process, thus 42 U.S. Code § 1983 and 18

U.S. Code § 242 claim exists anyhow.

264.    The violation of the Constitution, federal laws, other laws and statutes by the

defendants' conduct continues through today, I continue sustain injuries and the injuries

are on-going.

265.    Defendants' unlawful conducts changed me, from a person who in early 2019 can

lead and control my company to a person who cannot approach company premise, cannot

utter a word or a letter to anyone in the company, cannot in any way maintain any

association with anyone in the company, a company I founded, established, and

prospered through my leadership and management capabilities.

266.    Defendants' unlawful conducts also changed me, from a person who has

prospered financially through the $2.3M profit saved over 10 years to be totally stripped

of that personally property, and this $2.3M personal property as well as my rightful on-

going profit in AdSTM that should be earned in the on-going contracts have been spent and controlled by Jen Kim who has no legal rights to do so.

267.    These injury and suffering are ongoing, Defendant James Clark and Court Defendant indicated that they will one day issue an order to end the on-going injury, but that has not happened.

268.    Furthermore, Defendant James Clark and Court Defendant and Defendant Liam O'Grady did not follow fundamentally fair procedures before their conducts subjected me to damages and injuries, before I was deprived of property and liberty interest. Their conducts also infringed substantive due process in depriving my property and liberty regardless of procedures used, the very liberty of going to workplace, to associate with team members and employees, to interact with clients, to have the ability to express, the liberty that is deeply rooted in this nation's history and tradition by default and implicit in the concept of ordered liberty. These conduct on prohibition is so outrageous and constitutionally arbitrary that is so egregious as to shock the conscience.

269.    42 U.S. Code § 1983 and 18 U.S. Code § 242 imposes declaratory relief, injunctions, liability and liability for damages, and other punishment for defendants' violation or knowingly violation of the Constitutions, federal laws, and laws, specifically: the freedom of expressive association, Fourteenth and First Amendment, U.S. Const. amend. I, U.S. Const. amend. XIV, U.S. Const. art. I, U.S. Const. art. III, Civil liberties as established by the Constitution (the Bill of Rights), Title VII of the Civil Rights Act, 28 U.S.C. § 2201(a), 28 U.S.C. § 2202, and laws under the Sections 1983, Due Process Clause, Contracts Clause, Title VII of the civil rights Act, fundamental right of civil liberties, Right of Freedom of Association, rights of Anti-Discrimination Act, rights per

46

IRS Codes, rights of freedom of speech, freedom of association, freedom of expression, and freedom of movement, Equal Property Protection Act/Clause, equal protection and due process Clauses of the Fourteenth Amendment and the right to petition the Government for a redress of grievances Clause of the First Amendment, the Seventh Amendment's right to Jury trial, my right per state law that is protected by Federal laws, my rights to my freedom over majority portion of my productive time because Defendants locked me down and away from my workplace until further court order and banned me from going to my own workplace, from association or interaction with anyone in my company, from any form of speech and expression in my own company, which span over a significant amount of time and taking up a significant portion of my life for me to be in a restrained state. Defendants did all these without due process. My rights and interests were deprived without fairness.

270.     Defendant Liam O'Grady's dismissal order in the 2021 action was based on lack of jurisdiction with respect to Defendant James Clark and Court Defendant. Dismissal for lack of jurisdiction does not have claim or issue preclusive effect because they are not decided on the merits.

271.     Defendant Liam O'Grady's dismissal order in the 2021 action was based on failure to state a claim with respect to Court Defendant only and that order was based on alleged violations was limited to the violation of the Decree of Divorce only which Defendant Liam O'Grady formulated it as a violation of state law only but not a violation of Federal law or the violation of the Constitution.

272.     Defendant Liam O'Grady's dismissal order in the 2021 action based on failure to state a claim was not for and was not respect to Defendant James Clark.

273.    The claims contained in this Complaint in the instant case alleges violation of Federal Laws and violation of the Constitution. Thus, Defendant Liam O'Grady's order in the 2021 action does not contain any valid decision on the merits of and thus it does not have claim or issue preclusive effect on the claims contained in this Complaint in the instant case.

274.    Also, injury as stated in this instant case depends on full accounting. Full accounting was not performed in the 2021 action. Thus, this injury was not yet present in the 2021 Action. Therefore, claims alleged this instant case was not ripe for adjudication in the 2021 action if injury was not yet present at that time even if any alleged action of the defendant foretells legal injury to me.

275.    In addition, the claims contained in this Complaint in the instant case rest upon events that occurs or will occur or has occurred after Defendant Liam O'Grady's dismissal order in the 2021 action.

276.    Therefore, the claims contained in this Complaint in the instant case were not ripe at the time when Defendant Liam O'Grady entered his order in the 2021 action, thus Defendant Liam O'Grady's dismissal order in the 2021 action does not have preclusive effect on the claims or on the issues contained in this Complaint in the instant case.

277.    Furthermore, the claims contained in this Complaint in the instant case also include new facts and new defendant and it also include changed circumstance.

278.    The claims contained in this Complaint in the instant case are also premised on different transaction from the claim Defendant Liam O'Grady dismissed in the 2021 action.

279.    The action in the instant case arises out of the transaction and occurrence that was
        not the subject matter of the specific claim Defendant Liam O'Grady dismissed in the
        2021 action.

280.    Therefore, the claim contained in this Complaint in the instant case (the "2023
        claim") has never been adjudicated by any court, no court has considered the merits of
        the claims contained in this Complaint in the instant case.

281.    Hence, Defendant Liam O'Grady's dismissal order in the 2021 action does not
        have claim or issue preclusive effect on the claims contained in this Complaint in the
        instant case.

282.    Finally, claim or issue preclusion shall not apply when fairness and justice would
        not support it because such application would defeat the ends of justice.

**WHEREFORE**, Alice Guan, pro se Plaintiff, demands and prays that judgement be
entered for defendants' conducts under 42 U.S. Code § 1983 and 18 U.S. Code § 242 claim:

(a). against all defendants, in favor of Alice Guan for a Declaratory Judgment to resolve
the controversy on the Decree.

(b). against all defendants, in favor of Alice Guan for a prospective injunctive relief or an
injunctive relief so that the on-going and continuing violation of the above-mentioned
laws and statutes can cease. No party will suffer any cost or expenses in association with
the injunctive relief, thus no bond is required.

(c). against all defendants who acted as individuals, in favor of Alice Guan, for 1) the at least $2.3M damages, plus post and prejudgement interests; 2% of her AdSTM stock.  2). all of her attorney fees, cost and expenses, and her cost and expenses associated with the 2019 proceedings in Alexandria Circuit Court case CL07003662 and the appeals and petition associated with the 2019 proceedings of case CL07003662; all of her attorney fees, cost and expenses, and her cost and expenses associated with the Alexandria Circuit Court case CL19001664; all of her cost and expenses associated with the EASTERN DISTRICT OF VIRGINIA, case1:21-cv-00752 and the appeals and petition associated with case1:21-cv-00752; all of her attorney fees, cost and expenses, and her cost and expenses associated with the instant case. 3). for maximum punitive damages allowed under Code and laws, and for other damages including damages due to devalued AdSTM stock, due to lost profits resulted from lost opportunity to generate contracts and revenues, due to lost profit due to the lost classified contacts and due to illegal control, etc.

(d). against Jen Kim, in favor of Alice Guan, for an accounting to assess damages.

(e).in favor of Alice Guan that Defendants acting in their judgeship positions have no immunity available to them for reasons stated above and by law; also for the reason that because they were without jurisdictions over the cases, they are not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction.

(f). in favor of Alice Guan as there is plausible cause that Defendants James Clark and Liam O'Grady acted in their individual capacities in carrying out their conducts thus they personally are liable for damages.

(h). in favor of Alice Guan for further relief as this Court deems to be just and equitable, and appropriate.

## COUNT II - Deprivation of Property in violation of 42 U.S.C. § 1983
### (As to all defendants)

283.    I incorporate all of the Parties, Jurisdictions and Venues, and Allegations set forth in the forgoing paragraphs 1-212 as though fully alleged herein.

284.    As articulated in the forgoing paragraphs, as a result of defendants' conduct of depriving my rightful properties, I suffered injuries and damages, continue suffer, and will suffer in the future if my rights are not restored.


**WHEREFORE**, Alice Guan, pro se Plaintiff, demands and prays that judgement be entered against these defendants, in favor of Alice Guan,  for the at least $2.3M damages, plus post and pre judgement interests, for 2% of her AdSTM stock, all of her attorney fees, cost and expenses, and her cost and expenses associated with the 2019 proceedings in Alexandria Circuit Court case CL07003662 and the appeals and petition associated with the 2019 proceedings of case CL07003662; all of her attorney fees, cost and expenses, and her cost and expenses associated with the Alexandria Circuit Court case CL19001664; all of her cost and expenses associated with the EASTERN DISTRICT OF VIRGINIA, case1:21-cv-00752 and the appeals and petition associated with case1:21-cv-00752; all of her attorney fees, cost and expenses, and her cost and expenses associated with the instant case, for maximum punitive damages and other damages allowed under Code and laws, and for other damages including damages due to devalued AdSTM stock, damages due to lost profits resulted from lost opportunity to generate contracts and revenues, damages due to lost values of stock and lost profit due to the lost classified

contacts, etc., for an accounting to assess damages, for further relief as this Court deems to be just and equitable, and appropriate.

## COUNT III - Abuse of Process/ Negligence/Impairing Contractual Obligations/ Tortious Interference with Contract and Business Expectancy/Business Conspiracy (As to all defendants in their individual capacities)

285.    I incorporate all of the Parties, Jurisdictions and Venues, and Allegations set forth in the forgoing paragraphs 1-212 as though fully alleged herein.

286.    As articulated in the forgoing paragraphs, as a result of defendants' business conspiracy, abuse of process, Negligence, Impairing Contractual Obligations, Tortious Interference with Contract and Business Expectancy, I suffered injuries and damages, continue suffer, and will suffer in the future if my rights are not restored.


**WHEREFORE**, Alice Guan, pro se Plaintiff, demands and prays that judgement be entered against these defendants, in favor of Alice Guan for a Declaratory Judgment, for an injunctive relief, for the at least $2.3M damages, plus post and pre judgement interests, for 2% of her AdSTM stock, all of her attorney fees, cost and expenses, and her cost and expenses associated with the 2019 proceedings in Alexandria Circuit Court case CL07003662 and the appeals and petition associated with the 2019 proceedings of case CL07003662; all of her attorney fees, cost and expenses, and her cost and expenses associated with the Alexandria Circuit Court case CL19001664; all of her cost and expenses associated with the EASTERN DISTRICT OF VIRGINIA, case1:21-cv-00752 and the appeals and petition associated with case1:21-cv-00752; all of her attorney fees, cost and expenses, and her cost and expenses associated with the instant case, for maximum punitive damages and other damages allowed under Code and laws, and for other damages including damages due to devalued AdSTM stock, damages due to lost profits

52

resulted from lost opportunity to generate contracts and revenues, damages due to lost values of stock and lost profit due to the lost classified contacts, etc., for an accounting to assess damages, for further relief as this Court deems to be just and equitable, and appropriate.

### COUNT IV -  Defamation/Reputation-Based Tort/Civil Conspiracy/Conversion/ Violation of Other Virginia State Tort Law/Intentional Tort/ (As to all defendants in their individual capacities)

287.    I incorporate all of the Parties, Jurisdictions and Venues, and Allegations set forth in the forgoing paragraphs 1-212 as though fully alleged herein.

288.    As articulated in the forgoing paragraphs, defendants conspired, committed conversion, violated other Virginia State Tort Law, Intentional Tort, and Reputation-Based Tort to deprive my assets and my property and defamed me.  As a result of their conducts, I suffered, continue suffer to this date, and will suffer in the future if my rights are not restored.

**WHEREFORE**, Alice Guan, pro se Plaintiff, demands and prays that judgement be entered against these defendants, in favor of Alice Guan for a Declaratory Judgment, for an injunctive relief, for the at least $2.3M damages, plus post and pre judgement interests, for 2% of her AdSTM stock, all of her attorney fees, cost and expenses, and her cost and expenses associated with the 2019 proceedings in Alexandria Circuit Court case CL07003662 and the appeals and petition associated with the 2019 proceedings of case CL07003662; all of her attorney fees, cost and expenses, and her cost and expenses associated with the Alexandria Circuit Court case CL19001664; all of her cost and expenses associated with the EASTERN DISTRICT OF VIRGINIA, case1:21-cv-00752 and the appeals and petition associated with case1:21-cv-00752; all of her attorney fees, cost and expenses, and her cost and expenses associated with the instant case, for maximum punitive damages and other damages allowed under Code and laws, and for

other damages including damages due to devalued AdSTM stock, damages due to lost profits resulted from lost opportunity to generate contracts and revenues, damages due to lost values of stock and lost profit due to the lost classified contacts, etc., for an accounting to assess damages, for further relief as this Court deems to be just and equitable, and appropriate.

Original of this Complaint is Filed with the court by personal delivery to the Clerk's office on June 26, 2023.

Respectfully Yours,

Alice Guan, pro se
450B Paradise Road

#205

Swampscott, MA 01907

AJGCambridgeHome@gmail.com

617-304-9279